UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TAMARA N.,

                Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security Operations,

                Defendant.

Case No. 3:17-cv-05840-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

      Tamara N. has brought this matter for judicial review of defendant's denial of her application for supplemental security income benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. Plaintiff seeks reversal of the ALJ's decision and requests that the Court remand for a new hearing and a new decision.

      Plaintiff contends that the ALJ misapplied the law and lacked substantial evidence for her decision to deny benefits. Specifically, plaintiff argues that the ALJ erred by discounting plaintiff's reports of severe limitations due to bipolar disorder, anxiety, obesity, and

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 1

fibromyalgia, by failing to properly assess evidence of such limitations, including the lay testimony of her boyfriend, and by declining to order a consultative psychological examination.

Because the ALJ did not commit legal error and substantial evidence supports her findings, the ALJ's decision is affirmed.

I. Background

Plaintiff filed an application for supplemental security income benefits on March 3, 2014. 31, 2015. Dkt. 8, Administrative Record (AR) 14. Plaintiff's application alleged that her disability onset date was May 31, 2012. *Id.* Her claim were denied initially and on reconsideration. *Id.*

A hearing was held before an administrative law judge (ALJ) on April 15, 2016. AR 32-70. Plaintiff, her boyfriend, and a vocational expert appeared and testified. *Id.*

The ALJ determined that plaintiff suffers from the following severe impairments: "bipolar disorder II; generalized anxiety disorder; obesity; and fibromyalgia." AR 16.

The ALJ found that, even with the impairments and symptoms that were reflected in the medical records and in testimony, plaintiff can perform certain types of "light" work, including jobs as a production line solderer, electrical accessories assembler, and housekeeper. AR 26. The ALJ found that plaintiff can also perform certain jobs that would accommodate the additional requirement of a sit-or-stand option, including production line solderer and electrical accessories assembler. *Id.* And the ALJ found that plaintiff can perform certain types of "sedentary" work, including jobs as a semiconductor dye loader, semiconductor wafer breaker, and table worker. AR 26-27. The ALJ found that each of these jobs exists in significant numbers in the national economy. *Id.* The ALJ therefore found that plaintiff is not disabled. *Id.*

The Appeals Council denied plaintiff's request for review on August 16, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff appealed that decision in a complaint filed with this Court on October 26, 2018. Dkt. 4; 20 C.F.R. § 416.1481.

## II. Standard of Review and Scope of Review

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id*.

The five steps are a set of criteria by which the ALJ considers: (1) Does the claimant presently work in substantial gainful activity? (2) Is the claimant's impairment (or combination of impairments) severe? (3) Does the claimant's impairment (or combination) equal or meet an impairment that is listed in the regulations? (4) Does the claimant have Residual Functional Capacity (RFC), and if so, does this RFC show that the complainant would be able to perform relevant work that he or she has done in the past? And (5) if the claimant cannot perform previous work, are there significant numbers of jobs that exist in the national economy that the complainant nevertheless would be able to perform in the future? *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 724-25 (9th Cir. 2011).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009-10 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.* at 1010.

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576). If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Revels,* 874 F.3d at 654. The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Id.*

### III. The ALJ's Consideration of Medical Evidence

Plaintiff contends that the ALJ failed to properly evaluate the medical evidence. To support this argument, she summarizes treatment notes from between October 2012 and February 2016. Dkt. 12, pp. 3-8. These records show that plaintiff reported symptoms of anxiety, pain in her back, and diffuse tenderness, and that her providers diagnosed her with anxiety and bipolar disorder, obesity, and fibromyalgia or fibromyalgia-like conditions. *See id.*

Plaintiff acknowledges, and the ALJ noted, that no treating source opinion appears in the record. *See* AR 24. But she contends that the treatment record supports her testimony about her functional limitations. Dkt. 12, pp. 3-8. She asserts that the ALJ should have "properly evaluated the medical evidence and fully credited the findings of" plaintiff's treatment providers, and that her failure to do so was harmful error because she "could have reached a different disability determination" if she had done so.

Plaintiff does not identify a separate source of error in the ALJ's treatment of the medical evidence. In the case plaintiff cites, the Ninth Circuit Court of Appeals held that an ALJ's error in failing to consider lay witness testimony is only harmless if the court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

Here, the ALJ did not ignore the evidence plaintiff cites. Rather, the ALJ thoroughly discussed the treatment record. AR 20-24. The ALJ credited the findings and diagnoses by plaintiff's providers, finding that plaintiff has severe impairments including bipolar disorder, anxiety, obesity, and fibromyalgia and limiting the work that plaintiff has the ability to perform. AR 16, 18. Where, as here, the medical evidence in the record is not conclusive regarding the specific extent of work-related limitations that would or would not be present, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Likewise, plaintiff does not identify any error in the ALJ's evaluation of the opinions of the state agency psychological consultant, Dr. Gardner, and the state agency medical consultant, Dr. Ignacia. *See* Dkt. 12, pp. 7-8. The ALJ gave great weight to Dr. Ignacio and Dr. Garner's opinions, finding them uncontradicted and consistent with the treating record. AR 24-25. These were the only medical source opinions in the record. *See* AR 24.

Plaintiff contends that "[c]ontrary to the ALJ's analysis, neither Dr. Gardner's opinion nor Dr. Ignacio's opinion fully accounted for all of [plaintiff's] testimony about her symptoms and limitations." Dkt. 12, p. 8. A medical source is not required to credit all of a plaintiff's reported symptoms for the source's opinion to be entitled to significant weight. *See* 20 C.F.R.

416.927(c)(3) ("Supportability. The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). And as discussed below, the ALJ gave clear, convincing, and supported reasons for discounting plaintiff's reports.

IV. The ALJ's Consideration of Plaintiff's Testimony

Next, plaintiff asserts that the ALJ erred in evaluating her subjective symptom testimony because the ALJ failed to give clear and convincing reasons to reject that testimony.

Questions of credibility[1] are solely within the control of the ALJ. *Sample*, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. Even if the reasons for discrediting a claimant's testimony are properly discounted, that does not render the ALJ's determination invalid as long as that determination is supported by substantial evidence. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

In weighing a plaintiff's testimony, an ALJ must use a two-step process. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Smolen v.*

---

[1] Since the ALJ's ruling in this case, the Social Security Administration issued a ruling to "'eliminat[e] the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term' and to 'clarify that subjective symptom evaluation is not an examination of an individual's character' but instead was meant to be consistent with 'our regulatory language regarding symptom evaluation.'" *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (quoting SSR 16–3p (2016)). As the Ninth Circuit explained, the new

> ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Id.* (emphasis added).

*Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.*

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Here, plaintiff testified that she cannot work due to a lack of energy, difficulty being around people, and widespread, fluctuating pain. AR 38. Plaintiff stated that she experiences widespread pain that, on an average day, is a 5 on scale of 10. AR 39. She has had fibromyalgia since two years earlier, causing daily back pain and pain throughout her body, including fluctuating pain in her arms and legs. AR 43-44.

Plaintiff described that an exercise bike makes her pain improve, although "then I end up having to recover for several days." AR 39. Exercise "hurts too much" and walking gives her "a burning pain" in her back. AR 39, 47-48. Pain and tension in her legs make her unable to sit for longer than 30 minutes before she needs to change positions and stand up and walk around. AR 40. She can stand for about 20 minutes and walk for about 10 minutes. AR 40. Excessive movement—like "having to walk consistently uphill for a long period of time"—increases her pain, as does bending and lifting and stretching her arms. AR 45, 58.

Plaintiff stated that her fibromyalgia has gotten worse despite trying every recommended treatment. AR 45. Plaintiff had not pursued physical therapy because she felt discouraged after exercise and "was having money issues." AR 45-46.

Plaintiff described that she sleeps 8 to 10 hours and sometimes sleeps until the afternoon, in addition to taking naps. AR 42-43, 54.

Plaintiff explained she has bipolar disorder and becomes sad and tearful. AR 48, 50-51. She also becomes anxious in crowds, like at the store, but small groups like her therapy group do not cause anxiety. AR 52. She has anxiety using public transportation. AR 59-60. She gets panic attacks. AR 55-56. She had an attack two months earlier at a movie theater. AR 57-58. She has also had one at home, and her pain can trigger panic. AR 58. She also has trouble concentrating on conversations, due partly to her anxiety. AR 60. She starts doing projects and reading books and does not finish them. AR 60-61.

Plaintiff stated she was not receiving counseling at Group Health because her therapist had left and her insurance would no longer cover visits with that therapist. AR 37. Plaintiff turned down treatment because she did not like the therapists available at Group Health. AR 38.

Plaintiff explained that she does few household chores, drives little, and shops for groceries once a month. AR 41-42. She spends time with her boyfriend, visits with her parents, and sees friends twice a month. AR 42. On a typical day, plaintiff watches TV and plays games. *Id.* She lies down for 8 to 10 hours per day. AR 42-43. She is an artist but has trouble focusing. AR 43. (Plaintiff later testified that she watches TV "[v]ery rarely" during the day. AR 54.)

Before the hearing, in September 2014, plaintiff completed a function report stating similar symptoms: Pain made her daily activities difficult. AR 258. She would stay in bed and rest for a week every month. *Id.* Standing for short periods, walking, and sitting hurt, and she needed constant position changes. *Id.* Her hands cramped with use and were shaky when resting. *Id.* Her memory and focus had gotten worse. *Id.* She felt exhausted every day and slept 12 hours

per day and napped once or twice. *Id.* She had anxiety and panic attacks around people, experienced mood swings due to bipolar disorder, and had poor stress tolerance. *Id.*

The ALJ partly discounted plaintiff's subjective symptom testimony. AR 20. The ALJ gave several reasons for discounting plaintiff's testimony about her limitations. The ALJ reviewed the treatment record at length, and she found that, overall, objective examination findings and the treatment record are inconsistent with disabling mental or physical limitations. AR 20-23.

With respect to plaintiff's physical condition, the ALJ found that she "has tenderness but her range of motion, strength, and neurological exams are normal." AR 23. Regarding plaintiff's fibromyalgia in particular, the ALJ found that plaintiff's range of motion, strength, and neurological exams show normal results. AR 23. She also found that plaintiff's failure to follow the recommended treatment of exercise was not adequately explained either by the pain exercise caused or the copays she would have to pay when using her mother's insurance. AR 24.

With respect to plaintiff's mental-health symptoms, the ALJ found that her treatment "has consisted primarily of medication management," and that although she shows "ups and downs" due to situational stressors, "her symptoms appear to be adequately managed." AR 23. The ALJ noted that plaintiff's minimal therapy was helpful, but plaintiff "declined her psychiatrist's recommendation to reengage in therapy." *Id.*

The ALJ considered that the plaintiff offered "various reasons for why she does not follow the recommendations of treating providers," but found that the record did not show she reported those problems to her providers. For example, plaintiff stopped taking lithium without medical advice and did not report that it was because of urinary incontinence, as she testified;

and when she declined her psychiatrist's referral for psychotherapy, she did not report her concerns about seeing a new therapist. AR 23-24.

The ALJ also found that the record did not contain reports of hopelessness and suicidality, which plaintiff testified about. AR 24. The ALJ found that plaintiff did not report panic attacks occurring at a frequency that would interfere with work, and that the single instance she described occurred in public, at a movie theater. *Id.* (The RFC would limit plaintiff's jobs to those with no public contact.) The ALJ further noted that plaintiff's testimony about difficulty focusing was inconsistent with her psychiatrist's notes that her memory and concentration were intact. *Id.*; *see* AR 423, 448-49, 557. And the ALJ found that plaintiff's reports about her activities were inconsistent: although plaintiff testified she rarely watches TV, she had previously reported spending a lot of time watching TV and using the computer. AR 24; *see* AR 316-17.

The ALJ concluded that plaintiff had residual functional capacity

> **to perform a range of light work as defined in 20 CFR 416.967(b) in that she is able to lift and carry 20 pounds occasionally and 10 pounds frequently and sit, stand, and walk each up to 6 hours in an 8 hour workday. She can occasionally climb ladders, ropes, and scaffolds; frequently climb ramps and stairs; and frequently crouch, stoop, crawl, and kneel. She should avoid concentrated exposure to workplace hazards. She can understand, remember, and carry out simple instructions for tasks that deal primarily with objects rather than people. She can work in a setting with a predictable routine, no public contact, and no teamwork.**

AR 18 (emphasis in original).

The ALJ gave clear and convincing reasons for discounting some of plaintiff's testimony about her limitations, and substantial evidence supports those reasons.

Plaintiff contends that the ALJ could not discount her testimony based on solely on lack of corroboration from objective exam findings. An ALJ may not rely solely on a lack of

objective medical evidence to reject a claimant's subjective symptom testimony. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.2001). But "the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Id.*; Social Security Ruling (SSR) 96-7p (superseded by SSR 16-3p, after the ALJ decision in this case).

Plaintiff contends that the ALJ erred in relying on normal range-of-motion, strength, and neurological exams, because those exams were "fully consistent with fibromyalgia." Dkt. 12, p. 9. Plaintiff is correct that the ALJ could not reject her testimony about the effects of fibromyalgia based solely on a lack of objective findings. *Revels*, 874 F.3d at 656-57; SSR 12-2p. But the ALJ did not do so here.

Instead, the ALJ also found that plaintiff did not follow recommended treatment—exercise—because it hurt when she did it. AR 24. Plaintiff reported at her evaluation for fibromyalgia that she rode the stationary bike at a moderate pace, three-to-four times per week for 20 minutes. AR 393. She said she would "pay the price" after, though only if she "overdoes it." *Id.*

Plaintiff asserts that the ALJ should have acknowledged that plaintiff's provider recommended only "[g]raduated exercise," beginning at 5 minutes per day and increasing by 1 minute per week. *See* AR 397. But this recommendation from plaintiff's treating doctor supports the ALJ's finding rather than contradicting it. Other treatment records also support the ALJ's finding that plaintiff's doctors recommended exercise and that plaintiff did not follow the recommendations. *See* AR 272, 278-82, 312, 317, 398 ("Isometric exercises . . . are a safe way of strengthening muscles surrounding osteoarthritic joints."). In addition, no records indicate that plaintiff followed up on a referral to physical therapy. *See* AR 322.

Failure to assert a good reason for not seeking, or following a prescribed course of, treatment—or a finding that a proffered reason is not believable—"can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Conversely, an ALJ may not discount claimant's testimony based on a failure to pursue treatment, when the claimant "has a good reason for not" doing so, such as lack of insurance coverage. *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Plaintiff contends that the ALJ failed to adequately account for her explanation that needing to pay insurance copays and deductibles were a disincentive to attending physical therapy. The ALJ acknowledged this testimony, but also observed that plaintiff "admitted she had not pursued affordable care act coverage to which unemployed individuals are entitled even though she was aware of them." AR 24; *see* AR 46-47. The ALJ thus considered whether plaintiff presented a "good reason" for not seeing a physical therapist in mentioning insurance copays.

The ALJ likewise considered plaintiff's explanation for stopping psychiatric therapy, that her preferred therapist was no longer covered. AR 24, 45-47. The ALJ was not required, as plaintiff appears to argue, to prove that plaintiff would have been able to obtain such coverage, without paying copays, and continue seeing the same psychiatrist and therapist. *See* Dkt. 14, p. 7.

Plaintiff's brief then summarizes her hearing testimony at length, but does not identify any further basis for finding legal error in the ALJ's analysis. Dkt. 12, pp. 11-16.

Accordingly, plaintiff has not identified any error in the ALJ's consideration of plaintiff's testimony.

## V. The ALJ's Consideration of Lay Testimony

Next, plaintiff challenges the ALJ's decision to discount testimony by plaintiff's boyfriend ("the witness").

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even if the ALJ does "not clearly link his determination to those reasons." *Id.* at 512. Substantial evidence must support the ALJ's decision. *Id.* The ALJ may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

The witness submitted a third-party function report in June 2014. AR 186. He reported about plaintiff's daily activities and her ability to perform personal care and basic chores and shopping. AR 186-93. He added that plaintiff is anxious in interacting with strangers but gets along with authority figures, and that she handles stress poorly but changes in routine "OK." AR 25, 189-92.

The ALJ stated the she gave this testimony "some weight" and took into account the limitations that the witness noted. AR 25.

Plaintiff asserts that the RFC failed to account for all of the witness's statements, and that the ALJ failed to give any reason to reject those statements. Plaintiff points to the witness's statements about her sleeping habits, lifting limitations, social isolation, and stress intolerance. Dkt. 12, p. 17.

The ALJ did not err. The ALJ found, as part of plaintiff's RFC: "She can understand, remember, and carry out simple instructions for tasks that deal primarily with objects rather than people. She can work in a setting with a predictable routine, no public contact, and no teamwork." AR 18.

The RFC is thus *more* restrictive than the social limitations the witness noted: for example, that plaintiff plays a role-playing game with a small group once a week (though she tends to be "somewhat withdrawn"), goes to Target, Safeway, and the comic shop, and gets anxious in interacting with strangers, but gets along "fine" with authority figures and handles changes in routine "OK." AR 190-92. Although the witness wrote that plaintiff "tends to sleep for long periods of time (12+ hours) and/or take frequent naps," he did not state that she needed to take naps, or if so how often or for how long. AR 187. Because the RFC indicates the ALJ did not actually discount the lay testimony, she did not need to give reasons to do so.

Moreover, even if the ALJ discounted part of the witness's testimony, in these circumstances she did not need to give separate reasons for doing so. Plaintiff's testimony contained substantially all of the limitations the witness stated. *See* AR 38, 54 (fatigue, need for sleep); AR 51-52, 59 (depression and anxiety). An ALJ may reject the testimony of a lay witness when the ALJ has properly rejected the claimant's testimony and the lay witness's testimony is similar to the claimant's subjective complaints. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). Here, because the witness's functional evaluation stated the same limitations plaintiff testified to, the valid reasons the ALJ gave for discounting plaintiff's testimony were germane reasons to discount the witness's, too. *See id*.

VI. The ALJ's Failure to Order a Psychological Examination

At the hearing, plaintiff's attorney requested that the ALJ order a "comprehensive psychiatric or psychological evaluation." AR 70. The ALJ declined to do so. *Id.*

Plaintiff contends that the ALJ's decision violates social security regulations that require a consultative examination where there is no treating or examining source opinion on the claimant's functional limitations. Dkt. 12, p. 19 (citing 20 C.F.R. §§ 416.912, 416.919a). She also cites the general principle that social security proceedings are not adversarial, and that the ALJ has a duty to investigate facts and develop arguments both for and against awarding benefits. *See Sims v. Apfel*, 530 U.S. 103, 111 (2000).

Plaintiff points out that a Disability Determination Services officer sent her a letter requesting that she schedule a psychological exam because her medical record was incomplete. AR 222. She contends that the same note indicates that the agency had heard from the post office that plaintiff was not at the address listed. The note indicates, however, that "Subsequent phone & letters were sent & placed to [plaintiff's] third party contact," but neither plaintiff nor her contact responded. *Id.*

The Commissioner responds that the Social Security Administration can deny a claim if claimant fails to cooperate with the consultative examination process. 20 C.F.R. § 416.916 ("You . . . must co-operate in furnishing us with, or in helping us to obtain or identify, available medical or other evidence about your impairment(s). When you fail to cooperate with us in obtaining evidence, we will have to make a decision based on information available in your case."). The agency denied plaintiff's claim at the initial level for this reason. AR 72-79. But at the reconsideration level, the agency developed the record with treatment records from Group Health, AR 343-511. Based on those records, Jerry Gardner, Ph.D., a state agency psychologist, assessed plaintiff's mental RFC. AR 84, 88-90. Thus, the Commissioner contends, the medical record is no longer incomplete.

Plaintiff replies that the ALJ nonetheless erred because "the record does not include any treating or examining source opinion evidence regarding [plaintiff's] functional limitations." Dkt. 14, p. 10.

This is an incorrect reading of the regulations. These did not require the ALJ to request a psychological exam. Rather, they give the Commissioner discretion in deciding whether to require a consultative examination. 42 U.S.C. § 404.1517 (". . . we *may* ask you to have one or more physical or mental examinations or tests" [emphasis added]); 20 C.F.R. §§ 416.912(b)(2), 416.919a; *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) ("[T]he Commissioner 'has broad latitude in ordering a consultative examination.'" [quoting *Diaz v. Sec'y of Health and Human Servs.*, 898 F.2d 774, 778 (10th Cir.1990)]).

Nor did the ALJ err in her duty to develop the record. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff does not identify ambiguous evidence or an inadequacy in the record.

The ALJ reached the supported conclusion that plaintiff's symptoms of mental impairment were mild and, impliedly, that her treatment records were adequate to evaluate her impairments. AR 21-24. Although plaintiff correctly points out that the record does not contain any treating- or examining-source opinion evidence, the ALJ is not obligated to order an exam where the record indicates that a claimant's mental impairment is mild and the ALJ can rationally conclude that additional medical reports from treating physicians provide the necessary information. *See Griffith v. Callahan*, 138 F.3d 1150, 1154 (7th Cir. 1998), *overruled on other grounds*, *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999).

1  Accordingly, the ALJ did not err in declining to order a psychological exam.

## VII. The ALJ's RFC Assessment and Step-Five Finding

Finally, plaintiff contends that the ALJ erred in not including all of plaintiff's limitations in her RFC and, as a result, in determining at step five that she can perform jobs that exist in significant numbers.

The RFC is what the claimant "can still do despite his or her limitations." *Id.* At step five of the sequential disability evaluation process, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to perform. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 416.920(e). The ALJ can do this through testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2000). An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987).

Here, as noted above, the ALJ found that plaintiff could perform a modified range of light work. AR 18. The ALJ further found plaintiff could perform other jobs existing in significant numbers in the national economy based on that RFC at step five. AR 26-27. Plaintiff argues the ALJ erred in so finding, relying on the other alleged errors addressed above concerning the ALJ's consideration of the medical evidence, her testimony, and the function report by her boyfriend. But because the ALJ did not err, plaintiff has not shown that the ALJ erred in assessing her RFC or in finding her not disabled at step five.

## VIII. Conclusion

Based on the foregoing discussion, the undersigned finds no error in the ALJ's determination that plaintiff was not disabled. Defendant's decision to deny benefits is therefore AFFIRMED.

Dated this 27th day of December, 2018.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 18